## John J. Reimold vs. Frank Moore.

The rule of the civil law giving the privilege of towing on the banks of navigable rivers, and that the privilege is embraced in the public right of navigation, is at variance with the written American constitutional law, and by the common law the privilege of towage on the banks of such rivers was never given except upon the principle of compensation to riparian owners.

*Macomb Circuit, September,* 1870.

Case commenced before John Stockton, Esq., a Justice of the Peace, of Macomb County. The declaration alleges certain trespasses on the plaintiff's farm, lying on the southerly bank of Clinton river, and bounded on the northerly side by Clinton river, in said county, committed " on the first day of April, 1869, and divers days thereafter, in passing to and fro across said land by horses and men in towing vessels and in navigating said river, and usual allegations of trespass. The plea is the general issue, with a notice that the close, &c, in which the supposed trespasses were committed was the soil and free-hold of the defendant, and that defendant in his own right entered upon said land as his own freehold, &c., and further that the same was and is adjacent and along the banks of Clinton river, a navigable stream, which has been used by the public from time immemorial for the purposes of navigation, and that during all that time the public in using the stream for the purposes of navigation, have, in floating rafts, boats, barges and sailing vessels, up and down said stream, found it necessary to tow the same, and that for such purpose the said bank or border of said stream has been used as a path or way in passing up and down said stream by men and animals in towing as aforesaid, without let, trouble, hindrance or molestation, from all and any person owning lands on the said bank of said river.—

That the defendant was the captain of a vessel or schooner used in passing up and down said stream, and the acts complained of was done in the necessary towage of said schooner.

A bond was given and the case certified up to the Circuit Court.

It was conceded that the plaintiff was and is the owner of the land described in the declaration, and that it extends to and is bounded by the Clinton river on the north.

It was then proved by the plaintiff that on the first day of April, 1869, his fences ran into the river, and the defendant was on and crossed the land with one horse, towing a vessel. Defendant was seen there twice on the land, towing, and the plaintiff forbid him and told him he would sue, and defendant again came on to the land, and for this plaintiff brought suit; whereupon the plaintiff rested his cause.

The defendant then proved by Hon. Porter Kibbee, that he was the Commississioner named in the law of 1848, p. 47-8, and had known and been acquainted with Clinton river since 1836. That as such Commissioner he saw most of the parties living along the river and spoke to them about building three or four bridges and raising the bank in some places to make a tow-path. He did not recollect any obligations being made. No steps were taken to condemn the land or by legal proceedings to secure the right of way from the owners. He talked with most of the owners about the right to what was necessary, and no objections were made. There was no survey nor any defined width for a tow-path established or agreed upon.

Nathan Moser then occupied the farm now claimed by plaintiff. Could not state whether any improvements had then been made on the farm. Mr. Moser made no claim for compensation. There was a farm on the bridge next above. Messrs. Dickinson & Stockton had charge of making the repairs.

[Considerable further testimony was given relative to the use of the premises along the river bank as a tow-path, and as to improvements made in clearing the river of snags, repairing of bridges, &c., which it is deemed unnecessary to report. —REP.]

*Edgar Weeks*, Plaintiff's Attorney.

*Hubbard & Crocker*, Defendant's Attorney.

*By the Court*, MITCHELL, J.—There is no satisfactory evidence that the owners ever yielded or assented to the right to use their land for towing purposes, without compensation, any further than that some of them did not forbid the repairs made under Kibbee by Dickinson. On the other hand the testimony does satisfy me that the plaintiff and those under whom he claims, as well as the other owners along the river banks, (except where there was a highway,) have constantly demanded and insisted upon payment for crossing their land, in towing vessels, and that they have not assented to any public right or easement for the purpose of towing vessels in Clinton river. No proceedings appear to have been taken under the law of 1848, p. 47, appointing a commissioner and authorizing the construction of a towing path, except the letting of a contract to clear the river and some slight repairs on the supposed path. No survey was made or any other steps taken, as required by the law for laying out highways, *Rev. Stat. of* 1846, p. 133–4, and to which the commissioner was referred by the act appointing him, as the law under which he was to settle claims, and by which he was to be guided in laying out establishing and constructing said towing path.

No rights to a towing path were acquired under the law of 1848, and that law seems clearly to recognize the fact that a tow-path had not been established, and that it was necessary in some way to settle and determine the claims of the land owners before such a path could be constructed. It follows that the public have no right to cross the plaintiff's land or to use the bank of the river as a tow-path under any statute of this State. The public have not acquired a right to use the land for towing by user from time immemorial, they having been constantly opposed in the free use of the same.

It is said that the civil law gives the privilege of towing on the banks of navigable rivers, and that the privilege is embraced in the public right of navigation.

This is at variance with the common law and with the principles of the written American constitutional law. The right of towage was never given in England except upon the principle of compensation to the riparian owners. The question was brought directly before the King's Bench, in *Ball vs. Herbert*, 3 *T. R.*, 253, whether at common law the public have the right of towing on navigable rivers, and it was expressly decided that they had not. It was the general

opinion of the Judges that the right of towing depended on *usage*, without which it could not exist.

There have been decisions in Illinois and Tennessee partially holding with the civil law, but they are not generally accepted as the law of the United States. These decisions as well as somewhat similar ones in Missouri, do not go to the extent of giving the public a right to a tow-path along the banks, but only to the extent of saying that navigators have a right to land and fasten to the shore as the exigencies of navigation may require. They were undoubtedly founded upon the established usage of the Mississippi, and may so far be reconciled with the current of common law decisions. The right of towage may be acquired by long and unobstructed usage, but not when obstructed or adverse claims are constantly made. *See Kinlock vs. Neville*, 6 *Mees. & Wels., E. Ex.*, 794.

The banks are private property subject to the exclusive appropriation of the owners, and are not subject to the use of the public, (*Morgan vs. Reading*, 3 *Smedes & Marsh.*, 366,) while the questions involved in this case have never been precisely decided in any reported case in this State, yet the general principles that answer them have been substantially determined in the case of *Lorman vs. Bensen*, 8 *Mich.*, 18 ; *Rice vs. Ruddiman*, 10 *Mich.*, 125, and *Ryan vs. Brown*, 18 *Mich.*, 196.

In the first of these cases the common law rule in regard to navigable streams is distinctly applied to our tideless streams, and announced as the law ; the Court saying " that the common law rule is the most desirable one so far as fresh water streams are concerned." The second case carries the owner's rights to the centre of the stream for all beneficial purposes, so long as the public right of passage in the stream is not interfered with. And the last announces the broad principle that the riparian owner has the exclusive right to the bank of a stream for any beneficial purpose, and that the public cannot deprive him of the right without due compensation.

If this were not so, docks, booms, mills and all kinds of structures on the bank of a stream, would be illegal, and liable to be torn down or removed as nuisances, if it should be deemed necessary or economical to tow vessels, and they should be in the way of a tow-path.

In view of the whole case, I find that there was at the time when,

&c., no legal tow-path on the southerly bank of Clinton river; that the public had no right of passage over plaintiff's lands for the purpose of towage, and that the defendant is guilty as charged, and assess the plaintiff's damage at one dollar.